IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GAIL KING,

                                                                                    OPINION AND ORDER

                      Plaintiff,

                                                                                      07-cv-295-bbc

     v.

CITY OF MADISON,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil case in which plaintiff Gail King alleges that defendant City of Madison violated her rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, by failing to provider her with a reasonable accommodation when she became disabled from uncontrolled diabetes, severe headaches and dizziness. A close review of the facts in the case shows that although plaintiff has some continuing medical problems, she has been cleared by her physician to return to work in all positions except her former job of city bus driver. Nothing in her submissions shows that she is disabled within the meaning of either the ADA or the Rehabilitation Act. Even if she could make this showing, defendant has shown that its response to her requests for accommodation fulfilled any obligations it would have had to her under either act.

1

Accordingly, defendant's motion for summary judgment will be granted.

From the proposed facts submitted by the parties, I find that the following are material and undisputed.

UNDISPUTED FACTS

Plaintiff Gail King was hired as a Transit Operator by defendant City of Madison on August 5, 2002. She was promoted to a full-time operator on November 11, 2002. Her position was included in a city bargaining unit subject to the terms of a collective bargaining agreement between the city and International Brotherhood of Teamsters Local 695.

The collective bargaining agreement governing plaintiff's employment contained the following provisions related to Disability Leaves of Absence. A disabled employee is entitled to a disability leave of absence without pay for no more than six months, provided that the employee applies for the leave in writing and obtains permission for the leave from both the union and the employer. The employee must submit a physician's report that states the nature of the illness or injury and whether the employee is able to work. Before returning to work, the employee must submit a physician's release to the Transit Division Manager. Throughout the disability leave, the employee retains the right to return to her previous position. If the employee cannot return to work at the end of the disability leave, the employee must be placed in a disability layoff status for a period not to exceed 18 months.

2

During this layoff period, the employee may return to a vacant position within the classification held prior to the disability, provided the employee has physician approval to return to work and has the ability to do the work in the vacant position. If no vacancy exists or if the employee cannot do the work within her previous classification, the employee may displace the most junior employee in any job classification equal to or lower in range than her original position, provided that she has the ability to do the work of the new position. If the employee is unable to return to work after 18 months on disability layoff, her employment is terminated.

As a city employee, plaintiff was subject to Madison General Ordinance § 3.36(16), which entitled her to a leave of absence without pay for no more than six months, upon application to the employee's department head and approval of the city's human resources director and before returning to work, a physician's statement of release for work. Under the ordinance, if the employee is unable to return to work after six months, she is to be placed in a layoff status for a period not to exceed 18 months. If she is able to return to work during the layoff period, she has the rights set out in § 3.35(24)(b), (c) and (e)-(g) of the city ordinances. The employee with the least general seniority in the classification being reduced shall be displaced first. § 3.35(24)(b).

Plaintiff asked for leave without pay from her Transit Operator position because of a medical condition, beginning February 23, 2003. (Neither party specifies what the medical

3

condition was.) Her request was approved by defendant. She tried to return to work on June 20, 2003, but was unsuccessful. On June 23, 2003, defendant received a recommendation from plaintiff's treating physician that plaintiff not work for an indefinite period of time because of her pregnancy, diabetes and migraine headaches. Pursuant to the labor agreement and the city ordinances, plaintiff was placed on leave for the first six months of her indefinite leave. During this period she retained the right to return to her Transit Operator position upon clearance from her treating physician.

Once plaintiff had been on unpaid leave for six months, she was placed on layoff status with the city for a period of 18 months. During that time, she had a right to replace a less senior employee in an equal or lower pay classification or fill a vacancy within her bargaining unit for which she was qualified. Also, she had the right to apply for any vacancy within city employment and compete for the position.

Plaintiff's physician first authorized her return to work on or about July 30, 2004, but did not authorize a return to her Transit Operator position or any bus driving position because of her medical condition. (Again neither party specifies what the medical condition was that prevented plaintiff from driving bus. Plaintiff says that she has a history of vertebrobasilar migraine that produces severe headaches and vertiginous spells; this condition could be the basis for her doctor's recommendation.) At the time, the only position open to her in her bargaining unit was a Transit Service Worker's position, which

4

required the ability to drive a bus. Because of her medical condition, plaintiff could not fill that position.

Plaintiff wanted to move into an Operations Tech II position. Although there were persons in these positions less senior than plaintiff, defendant would not allow her to displace any of those persons, relying on the language in the labor agreement that allowed a person in plaintiff's situation to displace only "the most junior employee in any job classification equal to or lower in range than his or her original position in the bargaining unit." Plaintiff's range as a Transit Operator was 5A. The Operations Tech II range was 7.

During plaintiff's layoff period some Transit Operator positions became vacant but she could not fill any of these because she had not yet received a medical release to resume driving. During this same time, defendant had vacant positions in other bargaining units. Plaintiff applied for six positions while on layoff. Her test rank for two of the positions was high enough to make her eligible for interviews but she was not selected as the most qualified applicant for either job. Her test scores did not make her eligible for other positions for which she applied.

OPINION

The Americans with Disabilities Act prohibits employers from discriminating against qualified individuals with disabilities because of the disabilities. 42 U.S.C. § 12112(a). The

5

Rehabilitation Act prohibits discrimination on the same ground by any program receiving federal financial assistance. 29 U.S.C. § 794(a)(1). Both acts apply to defendant, but only the ADA needs to be discussed because its standards apply to cases brought under the Rehabilitation Act. Peters v. City of Mauston, 311 F.3d 835, 842 (7th Cir. 2002).

Like many people, plaintiff believes that her employer has a duty to accommodate any physical disability she suffers and to do so in a manner she finds acceptable. The reality is somewhat different. The employer's duty is not so wide ranging and the employee's eligibility for accommodation is relatively limited. Under the ADA, a plaintiff must show that (1) she suffers from a disability as defined under the Act; (2) she is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) she has suffered an adverse employment action because of her disability. Jackson v. City of Chicago, 414 F.3d 806, 810 (7th Cir. 2005). Plaintiff fails at the first step because she cannot show that she is "an individual with a disability who, with or without accommodation, can perform the essential function of the employment position she holds or desires." 42 U.S.C. § 12111(8). For the purpose of this case, "disability" means "a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual." 42 U.S.C. § 12102(2). "Major life activities" include activities such as "working" and "walking" that "are of central importance to daily life." Toyota Motor Manufacturing Kentucky, Inc. v. Williams, 534 U.S. 184, 187 (2002).

Plaintiff is subject to migraine headaches, dizziness, hypertension and diabetes. (It is unclear from the record whether the diabetes is gestational in nature or continuing; for the purpose of this motion, I will assume that the diabetic condition did not end with the birth of her child.) As troubling as these conditions may be to plaintiff, she has not shown that they amount to a substantial limit on her major life activities, either alone or in combination. Plaintiff concedes that her medical problems are controlled by medication and she continued to apply for jobs once she was released to return to work in July 2004, despite the conditions. Although she cannot drive a bus safely, a host of other jobs are open to her. Because they are, she cannot claim that she is substantially limited in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i) (individual is not substantially limited in major life activity of working unless she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities"); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999) (being "substantially limited" means more than just that individual cannot perform his particular job of choice or particular type of job).

Plaintiff does not suggest that her disorders limit her in any other major life activity. Therefore, she cannot show that she is an individual with a disability protected under the ADA or the Rehabilitation Act.

Even if plaintiff could have made the showing that she is an individual with a

7

disability, she could not show that defendant violated any of the rights that would accrue to such an individual under the acts. Defendant treated her exactly as it was required to do under its labor contract and the city's ordinances. Plaintiff does not contest this; she merely argues that defendant had an obligation to accommodate her inability to drive a bus by finding some reasonable accommodation for her. In particular, she asserts that defendant should have allowed her to displace a person in the Operations Tech II position. Defendant's obligations under the acts do not extend to overriding the terms of the governing labor contract and treating plaintiff *more* favorably than it would be required to treat individuals without disabilities. Defendant treated plaintiff exactly as it would have treated any other employee who asked for a leave of absence for medical reasons. No law required more of it. Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 679 ("Nothing in the ADA requires an employer to abandon its legitimate nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers."); see also, Trans World Airlines, Inc., v. Hardison, 432 U.S. 63, 79 (1977) ("duty to accommodate does not require employer to take steps inconsistent with otherwise valid collective bargaining agreement or seniority system.").

    This disposition of plaintiff's claims makes it unnecessary to consider defendant's argument that plaintiff's claims should be dismissed on the ground of issue preclusion because plaintiff raised in state administrative hearings the same arguments she is raising in

8

this court. Defendant contends that the court should dismiss plaintiff's claims under the holding in Waid v. Merrill Area Public Schools, 91 F.3d 857 (7th Cir. 1995), that courts must give preclusive effect to the Equal Rights Division's determinations in discrimination claims. Defendant was unable to raise this claim until its reply brief because it did not know until shortly before filing that brief that the State of Wisconsin Labor and Industry Review Commission had affirmed the dismissal of plaintiff's administrative charges by the Equal Rights Division. It appears likely that plaintiff's resort to administrative procedures would have required dismissal of her case had defendant been able to raise the issue earlier, but defendant is not prejudiced. Judgment will be entered in its favor on the merits.

ORDER

IT IS ORDERED that defendant City of Madison's motion for summary judgment is GRANTED on plaintiff Gail King's claims of discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12131, and the Rehabilitation Act of 1973, 29 U.S.C. § 794,

The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 11th day of March, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge